UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JAMES HENRY,**

      **Plaintiff,**

      **v.**

**SMYTH AUTOMOTIVE, INC.,**

      **Defendant.**

      **Case No. 2:20-cv-3292**
      **Judge Edmund A. Sargus, Jr.**
      **Magistrate Judge Kimberly A. Jolson**

**OPINION AND ORDER**

The matter before the Court is Defendant Smyth Automotive, Inc.'s ("Defendant"), Motion to Compel Arbitration (ECF No. 3). Plaintiff James Henry ("Plaintiff") filed a Response in Opposition (ECF No. 4) and Defendant has filed a Reply (ECF No. 5). For the reasons stated below, Defendant's Motion (ECF No. 73.) is **GRANTED**.

**I.**

When considering a motion to compel arbitration the Court may consider both the pleadings and additional evidence submitted by the parties. *See Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004); *see also Jones v. U-Haul Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (noting that on a motion to compel the Court reviews "the pleadings and evidence submitted by the parties"); *Sroka Advance Vehicles, Inc. v. Material Handling, Inc.*, No. 1:11-cv-907, 2011 U.S. Dist. LEXIS 80588, at *6 (N.D. Ohio July 25, 2011) (internal citations omitted) (noting that on a motion to compel arbitration courts should exercise wide discretion to look beyond the complaint at documents submitted by either party). The facts relevant to this motion as laid out in the pleadings and the documents submitted by the parties are as follows.

## II.

According to the Complaint, Plaintiff began driving for Defendant in September of 2015. (Compl. at ¶ 15, ECF No. 1 at PageID #4). Two years later, on September 18 of 2017, Plaintiff entered into an "Owner/Operator Agreement" ("Agreement") with Subcontracting Concepts LLC ("SCI")[1]. (Mot. to Compel, ECF No. 3 at PageID #20). That Agreement contained an arbitration provision. (ECF No. 3-1 at PageID #46).

The arbitration provision covers claims "arising from or relating to this agreement or the breach thereof, or service arrangement between [Plaintiff] and SCI's clients . . . ." (*Id.*). It continues that all claims, other than small claims, "shall be finally settled by arbitration in accordance with the policies of the Federal Arbitration Act and New York State's Arbitration provisions." (*Id.* at PageID #47). The provision also provides that the arbitrator's decision shall be "final and legally binding . . . ." (*Id.*).

On March 3, 2020, Plaintiff filed an arbitration proceeding. (Pl. Resp., ECF No. 4 at PageID #57). However, Plaintiff did not have a copy of the Agreement, which was required by the American Arbitration Association ("AAA") in order to proceed. (ECF No. 4 at PageID #58; ECF No. 4-2 at PageID #69). Accordingly, also on March 3, Plaintiff's counsel emailed Defendant's counsel asking for the Agreement, and Defendant's counsel responded that they would attempt to obtain it. (ECF No. 4-1 at PageID #67). After a back and forth of emails the Agreement was still unaccounted for. (*See* ECF No. 4 at PageID #58–59). Consequently, on March 31, 2020, the AAA closed the file "without prejudice." (ECF No. 4-5 at PageID #78). Plaintiff responded to the AAA's email stating their disagreement and asserting that only Defendant possessed the Agreement. (ECF No. 5-1 at PageID #102). Defendant replied back that it did not possess the arbitration agreement.

---

[1] According to the Complaint, SCI is a third-party administrator and/or referral agency that provides Defendant with workers. (Compl. at ¶ 7, ECF No. 1 at PageID #2).

(*Id.*) Defendant explained that it had requested a copy from CSI, but that "due to the COVID-19 pandemic and the resources being directed to respond to it," Defendant had not yet received the Agreement from SCI. (*Id.*).

Approximately three months later, on June 29, 2020, Plaintiff filed suit against Defendant in this Court. (Compl., ECF No. 1). Plaintiff alleges Defendant violated the Fair Labor Standards Act, Ohio's Minimum Fair Wage Standards Act, and the Ohio Prompt Pay Act; Plaintiff seeks relief accordingly. (*Id.* at ¶ 5). Plaintiff's counsel provided Defendant's counsel with a copy of the complaint. (ECF No. 4 at PageID #59). By the end of the day Defendant emailed Plaintiff stating that it received the Agreement from CSI, attaching the Agreement thereto. (ECF No.4-7 at PageID #86). On August 28, 2020, Defendant moved to compel arbitration. (ECF No. 3). The matter is now fully briefed, (ECF Nos. 4, 5), and ripe for review.

## III.

The Federal Arbitration Act ("FAA") provides that a written arbitration provision in a contract "involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. Congress's "preeminent concern . . . in passing the [FAA] was to enforce private agreements into which parties had entered." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). In line with that concern, the FAA authorizes federal courts to compel arbitration when a party to a dispute has refused to arbitrate as required under a written agreement. *See* 9 U.S.C. § 4.

When reviewing a motion to compel arbitration under the FAA, a court has four tasks. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). First, it must determine whether the parties agreed to arbitrate. *Id.* Second, it must determine the scope of the arbitration agreement. *Id.* Third, it must consider whether Congress intended for any of the asserted federal statutory claims to be

non-arbitrable. *Id.* Fourth, if it concludes that only some of the claims are subject to arbitration, the court must decide to stay the remainder of the proceedings pending arbitration. *Id.*

Courts must also address the issue of waiver when it is raised as a defense to arbitration. In the Sixth Circuit a party may waive an agreement to arbitrate by "(1) taking actions that are completely inconsistent with any reliance on an arbitration agreement," or "(2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley v. Duetsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (citing *O.J. Distribution, Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003)). However, "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005).

Any doubt "concerning the scope of arbitrable issues" is to be "resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (internal citations omitted). Relatedly, the Supreme Court has instructed that "[i]n the absence of any express provision excluding the particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause is quite broad." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85 (1960).

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-Haul*

*Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014); *Chambers v. Sun West Mortg. Co.*, No. 1:13-cv-399, 2014 U.S. Dist. LEXIS 72947, at *7 (S.D. Ohio May 28, 2014).

**IV.**

Here, the parties do not dispute the existence of an arbitration agreement, but they do dispute whether its scope extends to cover the claims at bar. Plaintiff also asserts a defense of waiver. The Court will address each in turn.

**A. Scope**

The first issue is whether Plaintiff raised claims in his complaint that fall within the scope of the arbitration provision. Plaintiff argues that the Agreement's arbitration provision does not cover the claims at bar because these claims precede the Agreement's effective date. (ECF No. 4 at PageID #56). Plaintiff points out that paragraph 21 of the Agreement states, "[t]he term of this agreement shall commence on the date of execution . . . ." (ECF No. 3-1 at PageID #46). Defendant replies that the effective date is irrelevant because nothing in the arbitration provision limits its scope to claims arising only after the effective date. (ECF No. 5 at PageID #92). Defendant argues that instead, the broad language in the arbitration provision encompasses claims predating the Agreement.

The language of this arbitration provision is broad. It covers, "any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, or service agreement between [Plaintiff] and SCI's clients . . . ." In this case that client is Defendant. (ECF No. 3 at PageID #28). The provision does not make any distinction between past, present, and future service agreements. It covers "any" dispute or claim relating to a service agreement. As such, the arbitration provision does not by its terms expressly limit itself to prospective application. The Court finds that the claims at bar fall within the scope of the arbitration provision.

5

## B. Waiver

The next issue to address is whether Defendant waived its contractual right to arbitrate these claims.

Plaintiff argues that Defendant waived any right to arbitrate by failing to produce the Agreement when requested during the prior arbitration proceeding. (ECF No. 4 at PageID #58). Plaintiff submits that the Agreement was always available to Defendant and bases this allegation on the timing of the Agreement's production, which Plaintiff views as suspect. (*Id.* at PageID #60). According to Plaintiff, Defendant's failure to produce the Agreement and the resulting dismissal constitutes action inconsistent with any reliance on a right to arbitrate under said Agreement. (*Id.*). Plaintiff asserts that this has resulted in actual prejudice because the arbitration proceeding was dismissed, the statute of limitations continued to run, undue delay has resulted, and Plaintiff has incurred additional expenses by proceeding in this Court. (*Id.* at PageID #62–63).

Defendant replies that it simply did not have the Agreement. (ECF No. 5 at PageID #95). Defendant explains that it requested the Agreement from SCI but that the Pandemic delayed SCI in addressing the matter. (*Id.*). Defendant points out that the obligation to provide AAA with the Agreement was born by both Plaintiff and Defendant, (ECF No. 4-2 at PageID #69), and asserts that Plaintiff could have contacted SCI but did not. (ECF No. 5 at PageID #95). Finally, Defendant notes that the arbitration proceeding was closed "without prejudice." (*Id.* at PageID #96) (citing ECF No. 4-5 at PageID #78).

The Court finds that the Defendant did not waive its contractual right to arbitrate. As previously mentioned, in the Sixth Circuit a party may waive an agreement to arbitrate by "(1) taking actions that are completely inconsistent with any reliance on an arbitration agreement," or "(2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'"

*Hurley v. Duetsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (citing *O.J. Distribution, Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003)). There is a "strong presumption" in favor of arbitration, and "waiver of the right to arbitration is not to be lightly inferred." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005).

Defendant's actions here are not "completely inconsistent" with reliance on its contractual right to arbitrate. *Hurley*, 610 F.3d at 338. There is no evidence that Defendant possessed the Agreement at any time during the arbitration proceeding. And, in view of the exhibits presented, it appears that Defendant did attempt to obtain the Agreement. (ECF No. 4-3 at PageID #74; ECF No. 5-1 at PageID #102). The timing of Defendant's ultimate retrieval of the Agreement is insufficient, standing alone, for this Court to infer that the Agreement was readily available to Defendant during the arbitration proceedings in March of 2020.

Defendant also has not delayed its assertion of its contractual right to arbitrate to such an extent that Plaintiff has incurred actual prejudice. In most cases where waiver is found based on delay and actual prejudice, the delaying party sat on its arbitration right for many months while allowing the case to proceed in court, often through discovery and dispositive motions. *See, e.g.*, *Hurley*, 610 F.3d at 338, 340 (before moving to compel arbitration, defendants litigated the action for over two years, during which time the plaintiffs incurred the costs of active litigation from extensive discovery, motions for summary judgement, and a change of venue). Here, on the other hand, Defendant moved to compel arbitration short of two months after Plaintiff filed his Complaint, no discovery has taken place, and no other motions have been filed.

**V.**

In the absence of evidence that goes to the validity of the Agreement itself, this Court finds that the Agreement – with its arbitration provision – is enforceable. A trial court has the inherent power to manage its docket, which includes the power to either stay or dismiss a case in which it orders arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–20 (1983). Accordingly, this Court hereby **STAYS** the proceedings in this case pending arbitration. Defendant's Motion to Compel Arbitration, (ECF No. 3), is **GRANTED**.

**IT IS SO ORDERED.**


**12/3/2020**                                             **s/Edmund A. Sargus, Jr.**
**DATE**                                                  **EDMUND A. SARGUS, JR.**
                                                          **UNITED STATES DISTRICT JUDGE**